## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOYCE OUTDOOR ADVERTISING   :
WALLSCAPES, LLC     :
  :
  :
  :
      Plaintiff,   :  **3:24-cv-00791**
  :  **(JUDGE MARIANI)**
    v.   :
  :
CITY OF SCRANTON and MAYOR   :
PAIGE GEBHARDT COGENTTI,   :
Individually   :
  :
     Defendants.   :

## MEMORANDUM OPINION

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 10). For the reasons that follow, Defendants' motion will be granted in part and denied in part. Specifically, Defendants' motion to dismiss Counts II, III, IV and VI will be denied. Defendants' motion to dismiss Counts VII and VIII will be granted, with leave to file an amended complaint.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On May 13, 2024, Plaintiff Joyce Outdoor Advertising Wallscapes, LLC ("Joyce" or "Plaintiff"), filed the instant civil right complaint (the "Complaint"). (Doc. 1). The Complaint alleges eight counts against Defendants City of Scranton ("Scranton" or the "City") and Defendant Mayor Paige Gebhardt Cognetti ("Mayor") (together, the "Defendants"). The Complaint alleges the following counts: (1) 42 U.S.C. § 1983 – Fourth Amendment

Unreasonable Seizure; (2) 42 U.S.C. § 1983 – Fifth Amendment Taking; (3) 42 U.S.C. §

1983 – Fourteenth Amendment Procedural Due Process; (4) 42 U.S.C. § 1983 – Fourteenth

Amendment Substantive Due Process; (5) 42 U.S.C. § 1983 – First Amendment Retaliation;

(6) 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection Clause; (7) Tortious

Interference With Contractual Relations; and (8) Conversion.  (Doc. 1).

On June 26, 2024, Defendants filed the instant motion to dismiss.  (Doc. 10).  In their

motion, Defendants seek dismissal of Counts II, III, IV, and VI for failure to state a claim

upon which relief may be granted.  (Doc. 15).  Defendants further seek dismissal of the

state law claims for conversion and tortious interference with contractual relations against

Defendant Mayor.  (*Id.*).

## II.    STATEMENT OF FACTS

The Complaint alleges the following facts:

Plaintiff is a Pennsylvania limited liability company maintaining its principal place of

business in Lackawanna County, Pennsylvania.  (Doc. 1 at ¶ 6).  Defendant City of

Scranton is "a Pennsylvania home rule municipality formed pursuant to the Pennsylvania

Home Rule Charter and Optional Plans Law, maintaining a principal place of business" in

Scranton, Lackawanna County, Pennsylvania.  (*Id.* at ¶ 7).  Defendant Mayor is the duly-

elected mayor of the City of Scranton, and maintains a principal place of business in

Scranton, Lackawanna County, Pennsylvania.[1]  (*Id.* at ¶ 8).

---

[1]    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

On March 22, 2007, Thomas R. Hill, Jr. took title to a parcel of real estate identified as tax map No. 14519-010-020 situated at West Linden Street and 8th Avenue in the City of Scranton, Lackawanna County, Pennsylvania (the "Property"). (*Id.* at ¶ 10). The Property was improved with a warehouse, consisting of concrete and steel building materials (the "Warehouse"). (*Id.*). On or about April 18, 2019, Plaintiff "entered into a lease agreement with Thomas R. Hill, Jr. to lease a portion of the exterior walls of the warehouse situated upon the Property for the purposes of displaying advertising signs." (*Id.* at ¶ 11). The lease terms included a rate of two thousands dollars ($2,000) per year for an initial term of twenty (20) years with automatic fifteen (15) year extensions thereafter. (*Id.*). On April 18, 2019, Plaintiff recorded a memorandum of lease with the Lackawanna County Recorder of Deeds, memorializing its lease agreement with Thomas R. Hill, Jr. (*Id.* at ¶ 12).

On May 13, 2019, the City of Scranton Department of Licensing, Inspections and Permits issued a building permit to Plaintiff allowing him to erect two, ten foot by thirty foot wide banner wall signs on the exterior of the Property (the "Billboards"). (*Id.* at ¶ 13). The next day, the City of Scranton Department of Licensing, Inspections, and Permits "issued an off-premise advertising sign permit to Plaintiff for the two (2) Billboards."[2] (*Id.* at ¶ 14). Plaintiff "received approximately $50,000 *per annum* in ad revenue from advertisers to

---

[2]    Defendant Scranton has adopted as its Property Maintenance Code, The International Property Maintenance Code, 2015 Edition, "for regulating and governing the conditions and maintenance of all property, buildings, and structures" situated in the City of Scranton. (*Id.* at ¶ 17).

advertise on the Billboards." (*Id.* at ¶ 15). On August 9, 2021, the owner of the Property, Thomas R. Hill, Jr. passed away. (*Id.* at ¶ 16).

On November 9, 2021, the City of Scranton Department of Licensing, Inspections and Permits "issue a demolition notice to decedent Thomas R. Hill, Jr., directing him to raze the Warehouse on the Property within twenty (20) days due to its alleged "dilapidated and dangerous condition," notifying the decedent that his failure to comply with the City's demolition notice "may result in the City securing the building and demolishing it." (*Id.* at ¶ 18). It further notified the decedent of his right to appeal to City's demolition order "by requesting a hearing before the [Scranton Housing] Board of Appeals" within twenty days of his receipt of the November 9, 2021, demolition notice. (*Id.*). "At no time did the City take any action to secure the Warehouse, to prevent anyone from gaining entry or to abate any actual or perceived hazard." (*Id.* at ¶ 19).

On February 17, 2022, Donald J. Totino, PE of the Municipal Department of Barry Isett & Associates, "[c]onducted an engineering inspection of the Warehouse situated upon the Property on behalf of the City." (*Id.* at ¶ 20). Approximately one month later, (and approximately three months after the City issued its demolition order), Mr. Totino "issued a letter to the City memorializing his findings from his February 17, 2022, site inspection and advising the City that 'the structured is not deemed an emergency for demolition.'" (*Id.* at ¶ 21). In contrast to the Warehouse on the Property, "there existed structurally unsound structures within the City that were in dire need of demolition, which the City chose not to

demolish." (*Id.* at ¶ 22). For example, the former J.G. Plotkin & Son Shoe Company (the "Plotkin Building"), which was damaged by fire on December 19, 2020. (*Id.*). "Despite the dilapidated and dangerous condition of the Plotkin Building, it was not scheduled for demolition unlike the Warehouse in question which was 'not deemed an emergency for demolition.'" (*Id.* at ¶ 23).

On April 29, 2022, the City "recorded its November 9, 2021, demolition notice issued to decedent Thomas R. Hill, Jr. with the Lackawanna County Recorder of Deeds." (*Id.* at ¶ 24). "The Warehouse did not at any time material hereto have any active utility services, namely, gas or electric service." (*Id.* at ¶ 25). On October 6, 2022, "or ten (10) months, three (3) weeks and six (6) days after the City issued its demolition order," the City "issued an external electrical permit to Plaintiff for illumination of two (2) Billboards affixed to the exterior of the Warehouse." (*Id.* at ¶ 26). Plaintiff, despite its alleged legal interest in the Property, "was not issued a written demolition notice for the Property by the City, notifying it of the City's demolition order or advising it of the right to appeal the City's demolition order by requesting a hearing before the Scranton Housing Board of Appeals."[3] (*Id.* at ¶ 28).

On August 23, 2022, the principal for Plaintiff, Kevin Joyce, "learned that the City was planning on demolishing the Warehouse on the Property" by reading an article in the *The Times-Tribune.* (*Id.* at ¶ 29). On October 28, 2022, "Plaintiff contacted the City,

---

[3]     Plaintiff alleges the failure to provide it notice was "in violation of §§ 107.2, 110.2, 111.1, and 202" of the provisions of the International Property Maintenance Code, 2015 Edition, as adopted by the City of Scranton. (Doc. 1 at ¶ 28).

notifying the City it had a recorded leasehold interest in the Property, advising that it was not

notified of the City's demolition order, and requesting that the demolition be stayed so that

the situation could be resolved to preserve Plaintiff's property and economic interest in the

Property." (*Id.* at ¶ 30). That same day, the City informed Plaintiff that, following its review

of the file of the Property, the City has "concluded that any and all notices regarding the

upcoming demolition have been property served upon the person(s) responsible for the

violation(s) that gave rise to the condemnation and subsequent demolition order" and that

any issues Plaintiff "may have with the upcoming demolition of the subject property should

be addressed towards the record property owner(s)." (*Id.* at ¶ 31).

    "Despite being made aware of Plaintiff's recorded leasehold interest in the Property,

the City refused to address the demolition issue with Plaintiff." (*Id.* at ¶ 32). Plaintiff alleges

that the City "maintains a policy, custom, habit and/or practice of not providing notice to

individuals and/or business entities with leasehold interests and of not affording them the

ability to seek a hearing before the Scranton Housing Board of Appeals to challenge a

demolition order affecting their leasehold interests." (*Id.* at ¶ 33). This conduct

"demonstrates the City's failure to train its employees and agents concerning the

Constitutionally protected property interests of leaseholders, which failure constitutes

deliberate indifference to the Constitutional rights of leaseholders as the risk of injury is a

highly predictable consequence of the City's failure to train its employees and agents." (*Id.*

at ¶ 34).

On October 31, 2022, "Plaintiff obtained an Order from the Lackawanna County Court of Common Pleas granting a special injunction temporarily enjoining the City, for five (5) days, from demolishing the Property and scheduling a hearing for November 4, 2022." (*Id.* at ¶ 35). At the hearing on November 4, 2022, the parties reached a temporary resolution whereby the City "agreed to postpone the demolition of the property until the end of January 2023 in order to give [Plaintiff] time to come to arrangement with the record owner." (*Id.* at ¶ 36). Plaintiff further agreed to board up and secure the Property to alleviate the safety concerns raised by the City. (*Id.*). "No later than November 8, 2022, Plaintiff had the Warehouse boarded up and secured to prevent anyone from gaining entry to the Warehouse." (*Id.* at ¶ 37).

On January 20, 2023, the City informed Plaintiff, after its inquiry, that "any further prolonging of the demolition may expose the City to unnecessary liability" and that it was proceeding with the demolition. (*Id.* at ¶ 38). Three days later, Plaintiff submitted a Scranton Housing Board of Appeals application, along with a $300 fee, seeking a hearing before the Board to appeal the City's demolition order.[4] (*Id.* at ¶ 39). That same day, the

---

[4]     "Chapter 360, Article 1, § 360.2.1(A) of the Code of the City of Scranton provides that '[a]ny owner or agent, as defined in the International Property Maintenance Code, 2015 Edition, aggrieved by the action or decision of the code official or authorized deputy of a notice or order issued under this article or code shall have the right to appeal such decision or order to the Housing Board of Appeals.'" (Doc. 1 at ¶ 40). "Section 202 of the International Property Maintenance Code, 2015 Edition, defines an 'owner' as '[a]ny person, agent, operator, firm or corporation having legal or equitable interest in the property.'" (*Id.* at ¶ 41). "Chapter 360, Article 1, § 360.2.1(D) of the Code of the City of Scranton provides "[f]ollowing the filing of an appeal but prior to the hearing [before the Scranton Housing Board of Appeals], if the applicant should so request in writing, the Director of the Department of Licensing, Inspections, and Permits, and/or his Deputy or another authorized representative, shall participate in negotiations to settle the matter with the appellant within an reasonable amount of time not to exceed 30 days.'" (*Id.* at ¶ 42).

City of Scranton Department of Licensing, Inspections, and Permits "refused to accept Plaintiff's Scranton Housing Board of Appeals application seeking a hearing before the Board to appeal the City's demolition order because Plaintiff purportedly did not have standing or a legal interest in the Property as a leaseholder." (*Id.* at ¶ 43). According to Plaintiff, the City "maintains a policy, custom, habit and/or practice of not allowing and/or not accepting applications from individuals and/or business entities with leasehold interests in a property subject to a demolition order affecting their legal interests be heard by the Scranton Housing Board of Appeals to challenge the demolition order affecting their leasehold interests." (*Id.* at ¶ 44). "Such conduct demonstrates the City's failure to train its employees and agents concerning the Constitutionally protected property interests of leaseholders, which failure constitutes a deliberate indifference to the Constitutional rights of leaseholders as the risk of injury is a highly predictable consequence of the City's failure to train its employees and agents." (*Id.* at ¶ 45).

On January 27, 2023, the principal for Plaintiff, Kevin Joyce, "contacted Mayor Cognetti and advised her that his biggest advertiser occupies the Billboards, and that the loss of the Billboards will have a significant detrimental economic impact on his business."[5] (*Id.* at ¶ 46). Mr. Joyce also advised Mayor Cognetti of his "further attempts to remedy the situation, after having boarded up and secured the Property" and of his "plan to buy the

---

[5] The Property at issue "was slated to be exposed to public auction at the Lackawanna County Tax Claim Bureau's May 5, 2023, judicial tax sale as the Property was previously exposed, but not sold at the Tax Claim Bureau's September 26, 2022, upset tax sale." (Doc. 1 at ¶ 47).

Property at the May 5, 2023, judicial tax sale and rehabilitate" the Property. (*Id.* at ¶ 48). Plaintiff alleges that Mayor Cognetti dismissed his claims and informed him that the issue with the Property "was an aesthetic problem." (*Id.*). Mr. Joyce also informed Mayor Cognetti "that the City of Scranton Department of Licensing, Inspections and Permits refused to accept Plaintiff's application seeking a hearing before the Scranton Housing Board of Appeals to appeal the City's demolition order because City personnel determined that Plaintiff did not have standing as a leaseholder." (*Id.* at ¶ 49). "Mayor Cognetti acquiesced in the City's refusal to accept Plaintiff's application seeking a hearing before the Scranton Housing Board of Appeals to appeal the City's demolition order." (*Id.* at ¶ 50).

On March 7, 2023, Plaintiff again requested that the City hold off on the Warehouse demolition until the May 5, 2023 judicial tax sale.[6] (*Id.* at ¶ 54). That same day, the City indicated its desire to move forward with the demolition because it had the funds to do so, the Warehouse was on its demolition list, and advised Plaintiff that "[t]he sale of the property has no bearing on the demolition of the structure." (*Id.* at ¶ 55). Plaintiff then alleges that the City, in two articles published in *The Times-Tribune*, represented that certain properties were removed for the demolition list because the properties were either acquired by new owners or was listed for sale by a real estate agent. (*Id.* at ¶¶ 56-57).

---

[6]        "The City did not demolish the Warehouse 'at the end of January 2023' despite its claimed safety concerns." (*Id.* at ¶ 52). And the City "did not demolish the Warehouse in February 2023 despite its claimed safety concerns." (*Id.* at ¶ 53).

On March 8, 2023, "Plaintiff asked the City, through its Law Department, for an opportunity to meet with City's representative to plead its case." (*Id.* at ¶ 58).  "Despite being aware of Plaintiff's leasehold interest in the Property, its efforts to secure the Property, its intention to purchase the Property at the upcoming tax sale to rehabilitate it and return it to the tax rolls, and the City's refusal to afford Plaintiff a hearing before the Scranton Housing Board of Appeals, the City refused Plaintiff an opportunity to meet with City representatives and plead its case." (*Id.* at ¶ 59).  Also on March 8, 2023, Mr. Joyce again contacted Mayor Cognetti and informed her that the demolition of the Warehouse, to which Plaintiff's Billboards were affixed, would cause significant economic damage to Plaintiff, and requested a meeting to discuss resolution of the situation.  (*Id.* at ¶¶ 60-61).

On March 9, 2023, the Lackawanna County Sheriff's Office "served the City of Scranton Department of Law with a copy of the February 27, 2023, rule to show cause issued by the Lackawanna County Court of Common Pleas setting a hearing on the Tax Claim Bureau's petition seeking to sell the property at its May 5, 2023, judicial tax sale." (*Id.* at ¶ 62).  The Sheriff's also served the City of Scranton's Department of Licensing, Inspections and Permits with the above-referenced order.  (*Id.* at ¶ 63).  "Mayor Cognetti unreasonably and without rational basis insisted that the Warehouse, which had been boarded up and secured by Plaintiff, was not in the opinion of the City's engineer 'deemed an emergency for demolition,' and which Plaintiff wished to purchase and rehabilitate and/or

redevelop and return to the tax rolls, 'cannot remain standing.'" (*Id.* at ¶ 65). Mayor Cognetti further refused to meet with Plaintiff to discuss a resolution. (*Id.* at ¶¶ 66-67).

On March 10, 2023, Mr. Joyce again contacted Mayor Cognetti. (*Id.* at ¶ 68). He informed her that, based on his recent meeting at the Property with a structural engineer (and as determined by the City's engineer the previous year), "Plaintiff's engineer indicated that the Warehouse was not in danger of immediate collapse and that a new roof could save the building." (*Id.*). Mr. Joyce further informed Mayor Cognetti that Plaintiff's structural engineer further found that "the portion of the Warehouse upon which the Billboards were affixed could remain in place, independent and exclusive of the remainder of the warehouse structure" and again requested a meeting with Mayor Cognetti. (*Id.* at ¶¶ 68-69). "Mayor Cognetti did not respond to Plaintiff's request for a meeting." (*Id.* at ¶ 70).

Again, on March 13, 2023, Mr. Joyce contacted Mayor Cognetti and again requested a meeting. (*Id.* at ¶ 71). Mayor Cognetti did not respond to Plaintiff's request for a meeting. (*Id.* at ¶ 72). "On March 14, 2023, Mayor Cognetti informed principal for Plaintiff, Kevin Joyce, that the demolition was moving forward." (*Id.* at ¶ 73). Plaintiff further alleges:

> Despite knowledge of Plaintiff's leasehold interest, its effort to improve and secure the Property, Plaintiff's desire to purchase the Property at the next tax sale, which would keep it on the City's tax rolls, that the Property was 'not deemed an emergency for demolition' and the City's refusal to afford Plaintiff a hearing before the Scranton Housing Board of Appeals, Mayor Cognetti made the decision or acquiescenced in the decision to demolish the Warehouse and Billboards affixed thereto to the severe harm and detriment to Plaintiff and its economic interests.

(*Id.* at ¶ 74).  "Mayor Cognetti refused to engage in discussions with Plaintiff to postpone the

demolition of the Property to allow Plaintiff to purchase the Property at the next judicial tax

sale."  (*Id.* at ¶75).

Between March 26, 2023, and March 28, 2023, while Plaintiff's principal was out of

town, the City caused the Warehouse on the Property to be demolished.  (*Id.* at ¶ 76).

"Despite reassurance from Mayor Cognetti, the City also caused Plaintiff's two (2) Billboards

affixed to the Warehouse upon the Property to be completely destroyed."  (*Id.* at ¶ 77).  The

Property was subsequently sold to Clear Brook Foundation on May 5, 2023, at the

Lackawanna County Tax Claim Bureau's 2023 judicial tax for $55,000.  (*Id.* at ¶ 78).

Plaintiff alleges that, as a result of the City's refusal to engage in meaningful

discussions and come to a resolution with Plaintiff regarding the Property, "the real estate

tax revenue generated through the improvement on the Property has been lost to all taxing

districts including the City and the City has wasted taxpayer money in demolishing the

Warehouse that could have been rehabilitated with private funds."  (*Id.* at ¶ 79).  "Upon

information and belief, the City has not filed a lien against the Property to attempt to recoup

its cost from the demolition."  (*Id.* at ¶ 80).

Plaintiff claims it "lost ad revenue, at the then current advertising rate, from

demolition of the Billboards through expiration of the initial twenty (20) year term of the

lease is approximately $800,000."  (*Id.* at ¶ 81).  "Plaintiff's lost ad revenue, at the then

current rate, from expiration of the initial term through the expiration of the first fifteen (15)

year extension is $750,000 and together with the lost ad revenue from the initial term,

equals $1,550,000.  (*Id.* at ¶ 82).  Finally, Plaintiff claims the "lost ad revenue, at the then

current rate, from expiration of the first extension through the expiration of the second fifteen

(15) year extension is $750,000 and together with the lost ad revenue from the initial term

and first extension, equals $2,300,000.  (*Id.* at ¶ 83).

### III.    STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations,

alterations, and quotations marks omitted).  A court "take[s] as true all the factual allegations

in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707

F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted).

Thus, "the presumption of truth attaches only to those allegations for which there is

sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President*

*of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S.

at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same

presumption." *Id*.

"Although the plausibility standard 'does not impose a probability requirement,' it

does require a pleading to show 'more than a sheer possibility that a defendant has acted

unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at

678). "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting

*Iqbal,* 556 U.S. 679).

## IV.    ANALYSIS

Defendants City of Scranton and Mayor Cognetti seek dismissal of certain counts in

the Complaint. More specifically, Defendants seek dismissal pursuant to Federal Rule of

Civil Procedure 12(b)(6) of Count II, Count III, Count IV, and Count VI. (Doc. 15).

Defendants further seek dismissal of the pendent state law claims alleged in Count VII and

VIII. The Court will address each of turn.

A.  **Section 1983 – Fifth Amendment Takings Claim**

Defendants seek dismissal of Count II alleging a violation of the Fifth and Fourteenth

Amendment because "there is no dispute that the Defendant COS acted pursuant to its

police power to regulate for the public welfare when it demolished the subject property."

(Doc. 15 at 20).

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant,

acting under color of state law, deprived him or her of a right secured by the Constitution or

the laws of the United States.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Section 1983 does not create any substantive rights but is merely a procedural vehicle

through which an aggrieved party may bring a claim.  *Id.*  There is no dispute that

Defendants were acting under color of state law.  The question then becomes whether

Plaintiff has alleged sufficient facts to raise a plausible inference that the Defendants

deprived him of a constitutional right.

"The Takings Clause of the Fifth Amendment states that private property shall not be

taken for public use, without just compensation."  *Knick v. Twp. of Scott*, 588 U.S. 180, 184,

139 S.Ct. 2162, 204 L.Ed.2d 558 (2019) (internal citation and quotation marks omitted).  Put

differently, "[t]he Fifth Amendment, made applicable to the states by the Fourteenth

Amendment, proscribes the taking of private property for public use without just

compensation."  *Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

The Fifth Amendment's Taking Clause, "does not prohibit the taking of private property, but

instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).  The purpose of the Fifth Amendment is "not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of an otherwise proper interference amounting to a taking."  *Id.* at 315 (emphasis in original).

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part therefore." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).  "Thus, compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary." *Id.*  Moreover, the Taking Clause applies not only to real property, but to personal property as well.  *See Frein v. Pennsylvania State Police*, 47 F.4th 247, 251 (3d Cir. 2022) ("The Fifth Amendment's text supports the parents.  After all, their guns are private property.  And they were taken by the officials.  Plus, the parents have never gotten a dime, let alone just compensation.").

Defendants claim the Court must dismiss Plaintiff's taking claim because the City exercised its police powers to condemn the property and thus no compensation is required. (Doc 15 at 19-20).  In contrast, Plaintiff alleges Defendants' actions amounted to a taking

and that no compensation, let alone just compensation, was paid.  As the Third Circuit has

recognized, "[t]he problem under the Takings Clause lies in the misty region between the

limits of the police power and the power of eminent domain."  *United States v. Bertoli*, 994

F.2d 1002, 1024 (3d Cir. 1993).  "Police power involves the regulation of property to

promote health, safety and general welfare and its exercise requires no compensation to the

property owner, even if there is an actual taking or destruction of property, while eminent

domain is the power to take property for public use, and compensation must be given for

property taken, injured, or destroyed."  *Redevelopment Auth. of Oil City v. Woodring*, 498

Pa. 180, 186, 445 A.2d 724 (1982); *see also id.* at 187 (affirming trial courts finding that

defendant's action "was taken on the basis of aesthetic considerations only . . . and [the

trial] court was thus correct when it concluded that the Authority's action in this case

constituted an exercise of its power of eminent domain and not an exercise of police

power.").  "[A] municipality may, in the exercise of its police power, without compensation

destroy a building or structure that is a menace to public safety or welfare, or require the

owner to demolish the dangerous piece of property."  *See In re 106 N. Walnut*, *LLC*, 447 F.

App'x 305, 309 (3d Cir. 2011).  In contrast, "[t]he government commits a physical taking

when it uses its power of eminent domain to formally condemn property."  *Cedar Point*

*Nursey v. Hassid*, 594 U.S. 139, 147, 141 S.Ct. 2063, 210 L.Ed.2d 369 (2021).  "These

sorts of physical appropriation constitute the clearest sort of taking, and we assess them

using a simple, *per se rule*:  The government must pay for it takes." *Id.* at 148.

Plaintiff's complaint alleges a physical (*per se*) taking, as opposed to a regulatory taking. This includes the alleged taking without just compensation of its leasehold interest in the Property as well as the taking without just compensation of the allegedly destroyed Billboards. Plaintiff further alleges that the Defendants actions were not a valid exercise of its police power. At this stage of the proceeding, the Court agrees that Plaintiff has alleged sufficient plausible factual content giving rise to the inference that Defendants actions were not a valid exercise of its police powers and thus in violation of the Fifth Amendment's taking clause. *See Deiter v. City of Wilkes-Barres*, 3:16-CV-132, 2021 WL 2020589, at *8 (M.D. Pa. May 19, 2021) (denying motion for summary judgment on taking claims where "whether the demolition of [plaintiff's] home constituted a valid exercise of police power is an issue for trial."). As alleged in the Complaint, Plaintiff claims that the City's engineer found that the structure was not deemed an emergency demolition, Plaintiff, at the request of the City, boarded up and secured the Warehouse, Plaintiff's engineer determined that a new roof could salvage the Warehouse or the portion of the Warehouse upon which the Billboards were affixed, among other things. (Doc. 1 at ¶¶ 76-77). Accepting Plaintiff's allegations as true, as the Court must, Plaintiff's Complaint states a claim for an uncompensated taking in violation of the Fifth and Fourteenth Amendments and thus Defendants' motion will be denied.

### B.  Section 1983 – Fourteenth Amendment Procedural Due Process

Defendants' next seek dismissal of Count III alleging a violation of procedural due

process, which also includes a *Monell* claim against the City.  According to Defendants, the

Court must dismiss Plaintiff's claim because "it is clear that Joyce was not deprived of the

opportunity to be heard; as such, the procedural due process claim fails."  (*Id.* at 28).  They

further maintain that in "the absence of an underlying constitutional violation there can be no

*Monell* liability against the city."  (Doc. 15 at 22).

"The Fourteenth Amendment places procedural constraints on the actions of

government that work a deprivation of interests enjoying the stature of 'property' within the

meaning of the Due Process Clause."  *Memphis Light*, *Gas*, *& Water Div. v. Craft*, 436 U.S.

1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).  "At the core of procedural due process

jurisprudence is the right to advance notice of significant deprivations of liberty or property

and a meaningful opportunity to be heard."  *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.

1998).  "To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the

procedures available to him did not provide due process of law."  *Hill v. Borough of*

*Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal citation and quotation marks

omitted).  "Due Process is flexible and calls for such procedural protection as the particular

situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 324, 96 S.Ct. 893, 47 L.Ed.2d 18

(1976).  The Supreme Court has established a three-factor balancing test to determine what

process is constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of
> an erroneous deprivation of such interest through the procedures used, and the
> probable value, if any, of additional or substitute procedural safeguards; and finally,
> the Government's interest.

*Id*. at 335.

The Court first considers whether Plaintiff has alleged a property interested protected

by the due process clause.  State law creates property rights which are protected by the

Fourteenth Amendment.  *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92

S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("Property interests, of course, are not created by the

Constitution.  Rather they are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law rules.").  The Court

must therefore look to Pennsylvania law to determine whether the interests Plaintiff

possessed in the Property at issue and the Billboards are entitled to due process protection.

The law is Pennsylvania is clear.  Plaintiff's alleged leasehold interest in the Property

at issue confers a property interest upon Plaintiff protected by Pennsylvania law.  *See Ruiz*

*v. New Garden Twp.*, 376 F.3d 203, 206 (3d Cir. 2004) ("under Pennsylvania law,

leaseholders have the same right to possession of real estate as an owner during the term

of the lease"); *see also Berrios v. City of Lancaster*, 798 F. Supp. 1153, 1157 (E.D. Pa.

1992) ("A leasehold interest, that is the right to possession exclusive of all others, including

the owner of the underlying fee, is a property interest under Pennsylvania law, as reflected

in the case law generally, and defined and created by, among other things, the terms of the lease contract."). Moreover, the Billboards situated on the Property are considered Plaintiff's personal property under Pennsylvania law. *Frein*, 47 F.4th at 251. Accordingly, Plaintiff has satisfied the first prong of the analysis by plausibly alleging property interests protected by Pennsylvania law.

"Property interests may only be deprived subject to constitutionally adequate procedures." *Ransom v. Carbondale Area Sch. Dist.*, 982 F. Supp. 2d 397, 403 (M.D. Pa. 2013). And "[t]he level of process due to a party prior to the deprivation of a property interest, such as a lien, is highly dependent on the context." *In re Mansaray-Ruffin*, 530 F.3d 230, 239 (3d Cir. 2008). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Button v. Snelson*, No. 3:12-CV-01941, 2016 WL 1252784, at *11 (M.D. Pa. Mar. 23, 2016) (internal citation and quotation marks omitted). It is well settled that "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or

patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*

"In the context of land use disputes, the Court of Appeals has held that state and municipal officials are constitutionally obliged to offer a means by which individuals may challenge zoning restrictions and other adverse land use decisions." *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 690 (E.D. Pa. 2017) (citing *Maple Props.*, *Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 178 (3d Cir. 2005)). "The process that is due in a given situation necessarily different based on the particular circumstances." *Id.* (internal citation and quotation marks omitted). "For example, a determination of just compensation for condemnation of property requires notice and an opportunity for a hearing, while a denial of a license application does not necessitate a hearing so long as prompt administrative or judicial review of the action is available." *Id.*

Plaintiff alleges that Defendants violated its right to procedural due process in at least two ways. First, that it did not receive adequate notice prior to the demolition of the Property and, second, that the City refused to accept Plaintiff's Scranton House Board of Appeals application and afford it an opportunity to be heard by the Board to appeal the City's demolition order. (Doc. 18 at 23). Plaintiff further claim that:

> Although the City Defendants did not provide written notice of the demolition order to Plaintiff in violation of its own laws, Plaintiff acknowledges that it did have actual notice, and that Plaintiff's due process claim is rooted in the City Defendants' refusal to accept Plaintiff's Scranton Housing Board of Appeals application and afford Plaintiff an

opportunity to be heard by the Board to appeal the City's demolition order or to participate in negotiations to settle the matter as made available under the City Code.

(*Id.*).

"In the typical situation, the hearing should come before the Government deprives a person of his property." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008). However, "in special circumstances, a state may satisfy the requirements of procedural due process merely by making available some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." *Id.*

As discussed, Plaintiff has plausibly alleged a property interest, both as to its leasehold interest in the Property and the Billboards themselves. Indeed, Defendants do not dispute that Plaintiff has satisfied the first prong of the analysis "[f]or purposes of this submission only." (Doc. 15 at 23 n.5). The question then becomes whether Plaintiff plausibly alleges that the procedures available to it did not provide due process of law.

Here, "the Court must first determine whether the City and [defendant] were faced with a circumstance in which they were required to provide a pre-deprivation hearing. If so, then no amount of post-deprivation process could cure the City's… failure to provide a hearing. If no pre-deprivation hearing was required under the circumstances, the Court must then determine whether the State's post-deprivation process was sufficient." *Deiter*, 2021 WL 2020589, at *8 (citing *Elsmere Park Club*, 542 F.3d at 417).

The Third Circuit has adopted a deferential approach when a City claims an emergency situation justified summary action:

> The law should not discourage officials from taking prompt action to ensure the public safety.  By subjecting a decision to invoke an emergency procedure to an exacting, hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions.  This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable.

*Elsmere Park Club*, 542 F.3d at 418 (internal citation and quotation marks omitted).  Thus, "where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exists . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion."  *Id.*

Both parties dispute whether an emergency existed such that demolishing the Property without notice or an opportunity to be heard prior to the demolition may be justified. Viewing the facts in the light most favorable to the Plaintiff, Plaintiff plausibly alleges facts giving rise to the inference that a bona fide emergency did not exist, such that the actions of Defendants were not justified under the circumstances.  *See Para v. City of Scranton*, Civil Action No. 3:CV-06-2432, 2008 WL 2705538, at *15 (M.D. Pa. July 10, 2008) ("The Court agrees with the Plaintiff that the City of Scranton did not have a strong interest which would require only post-deprivation process due to its finding that the Plaintiff's structure was not an immediate danger to public safety, since the City waited approximately fifteen (15) months between the time of the first notification . . . and the time of the hearing . . . before taking action with respect to Plaintiff's building.").

In addition, the Court finds that Plaintiff has plausibly alleged facts demonstrating

that the procedures available to him did not satisfy procedural due process. Defendants

note that "Joyce had the benefit of judicial intervention at the state court level seeking

precisely the same relief that it sought from the Board of Appeals. The fact that Joyce's

appeal was not accepted does not negate the fact that it had a full and fair opportunity to

challenge the demolition in state court." (Doc. 15 at 28). However, that does the end the

inquiry at this stage of the litigation. The allegations in the Complaint are sufficient to

survive Defendants' motion to dismiss Plaintiff's Section 1983 claims alleging a

constitutional violation for lack of procedural due process.

Plaintiff further asserts a *Monell* claim against the City alleging a deprivation of

property without procedural due process. Defendants seek dismissal of the *Monell* claim,

asserting that without an underlying constitutional violation there can be no *Monell* liability.

(Doc. 15 at 20-22). Defendants further state in their brief:

> However, the Defendants are mindful that *Monell* liability is generally not amenable to resolution at the pleading stage, as it requires a plaintiff to plead facts outside his or her personal knowledge. Resolution of the ultimate merits of a *Monell* claim usually requires examination of matters beyond the pleadings, a task which cannot be undertaken in the context of a motion to dismiss. . . . Accordingly, rather than engage in a substantive *Monell* analysis at this juncture, the City maintains its position that the absence of an underlying constitutional violation precludes a finding of *Monell* liability against the City.

(*Id.* at 22). As discussed above, the Court concludes that Plaintiff has plausibly

alleged an underlying constitutional violation of its Fourteenth Amendment rights to

procedural due process.  And, given Defendants' well-founded concessions, the Court will not dismiss Plaintiff's *Monell* claim against the City.

### C. Section 1983 – Fourteenth Amendment Substantive Due Process

Defendants also move to dismiss Count IV alleging a violation of the Fourteenth Amendment's substantive due process clause.  Specifically, Defendants claim that Count IV must be dismissed because Plaintiff has failed to plausibly allege conduct that "shocks the conscience."  (Doc. 15 at 32).  In order to state a claim under the Fourteenth Amendment's substantive due process clause in the context of a land-use dispute, the Plaintiff must allege that it: (1) had a property interest protected by the Fourteenth Amendment's substantive due process clause; and (2) was deprived of that interest by local officials' behavior that shocks the conscience.  *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

"The first step in assessing a substantive due process claim is to identify the constitutional interest that was allegedly aggrieved."  *Giuliani*, 238 F. Supp. 3d at 695 (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).  Here, Plaintiff's property at issue— both the leasehold interests and the Billboards themselves—are property interests protected by the Fourteenth Amendment's due process clause.  *See Galanopoulas v. Smithgall*, No. Civ. A. 02-8362, 2005 WL 196441, at *4 (E.D. Pa. Jan. 26, 2005) ("A leaseholder has the same property interests as the owner of property" and thus is entitled to protection under the Fourteenth Amendment's substantive due process clause); *see also Nicolette v. Caruso*, 315 F. Supp. 2d 710, 722 (W.D. Pa. 2003) ("As a lessee of real property, plaintiff meets the

26

first requirement of stating a substantive due process claim, a fundamental property interest worthy of substantive due process protection.").

The second step is determining whether the facts alleged by Plaintiff plausibly show conduct that "shocks the conscience."  The Third Circuit addressed what "qualifies as conscience-shocking behavior in the land use context, including:  evidence of 'corruption or self-dealing,' the hampering of development in order to interfere with otherwise constitutionally-protected activity, municipal action reflecting 'bias against an ethnic group,' or evidence indicating a 'virtual taking' of the claimant's property."  *Giuliani*, 238 F. Supp. 3d at 696 (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)).  "Only the most egregious official conduct qualifies."  *Id.*  "Governmental conduct that is purposefully injurious is most likely to be indicative of conduct that shocks the conscience." *Skiles v. City of Reading*, 449 F. App'x 153, 157 (3d Cir. 2011) (citing *Evans v. Sec. Pennsylvania Dep't of Corrs*, 645 F.3d 650, 660 (3d Cir. 2011).

However, "[g]overnment action does not violate substantive due process when merely prompted by an 'improper motive.'"  *Giuliani*, 238 F. Supp. 3d at 696 (quoting *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006)).   And mere violations of state law, even those taken in bad faith, do not give rise to conscience shocking behavior in violation of the substantive due process clause.  *Giuliani*, 238 F. Supp. 3d at 700; *see also High Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251 (3d Cir. 2010) (affirming dismissal of substantive due process claim in land use dispute where "the

most that can be proven is a bad-faith violation of state law, which does not meet the standard").

Although it is a close call, the Court finds that Plaintiff has plausibly alleged "conscience shocking" behavior that could rise to the level of a substantive due process violation. *See Nicolette*, 315 F. Supp. 3d at 723 (plaintiff "alleged a course of conduct undertaken by defendants with the intent to harm and restrict his ability to carry out his business on the parcel of land he leased in [the township]. . . . plaintiff made factual allegations that the township officials engaged in a course of conduct designed to restrict plaintiff from developing the property he leased. Accepting these factual allegations as true and making inferences favorable to plaintiff for purposes of the motion to dismiss, the court finds that, albeit this is a close question, plaintiff's complaint implicated the 'shock the conscience' test sufficiently to survive a motion to dismiss."). Accordingly, Defendants' motion to dismiss Plaintiff's substantive due process claim will be denied.

### D.  <u>Section 1983 – Fourteenth Amendment Equal Protection Clause</u>

Defendants next move to dismiss Count VI alleging a violation of the Fourteenth Amendment's Equal Protection Clause on the ground that Plaintiff fails to allege that it was treated differently from others similarly situated. (Doc. 15 at 37-38).

The Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Supreme Court has recognized that this is "essentially a direction

that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Cent.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Plaintiff brings a "class-of-one" equal protection claim, which the Supreme Court recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). "According to that theory, a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill*, 455 F.3d at 239 (quoting *Olech*, 528 U.S. at 564). At the very least, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citation and quotation marks omitted). "The Complaint must identify similarly situated individuals and allege that the plaintiff was treated differently." *Pro Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp 2d. 575, 586 (E.D. Pa. 2010). "Determining whether an individual is similarly situated to another individual is a case-by-case fact-intensive inquiry." *Giuliani*, 238 F. Supp. 3d at 702.

The Court finds that Plaintiff has plead a plausible claim under the Equal Protection Clause. First, Plaintiff has plausibly alleged that the Defendants treated it different from others similarly situated. Indeed, the Complaint identifies several properties and alleges

that it was treated differently than these similarly situated properties and there was no rational basis for this unequal treatment. (Doc. 1 at ¶¶ 126-127). At the pleading stage, these allegations are sufficient to survive a motion to dismiss. Second, Plaintiff alleges that the Defendants treatment was intentional. (*Id.* at ¶ 128). Finally, the Court finds that Plaintiff plausibly alleges that Defendants treatment of it was not rationally related to a legitimate government purpose. "Under the rational basis test, a law does not run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Stradford v. Sec. Pennsylvania Dept. of Corrections*, 53 F.4th 67, 77 (3d Cir. 2022) (internal citation and quotation marks omitted). Viewing the facts alleged in the Complaint in the light most favorable to the Plaintiff, as the Court must, Plaintiff has alleged sufficient facts to plausibly allege a class of one equal protection claim. Defendants' motion to dismiss will be denied.

### E.  Pennsylvania State Law Claims

Finally, Defendants seek dismissal of Count VII and Count VIII alleging state law claims of tortious interference with contractual relations and conversion on the theory that Mayor Cognetti, as a high-ranking public official, enjoys immunity under Pennsylvania state law. (Doc. 15 at 30-34).

"The elements of a claim for tortious interference derive from the Restatement (Second) of Torts § 766, which has been adopted by Pennsylvania courts and federal courts applying Pennsylvania law." *Giuliani*, 238 F. Supp. 3d at 709. A Plaintiff alleging tortious

interference with contractual relations under Pennsylvania law must plead the following

elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 275, 284 (3d Cir.

2004).

"[U]nder Pennsylvania law, conversion is the deprivation of another's right to

property, or use or possession of a chattel, or other interference therewith, without the

owner's consent and without legal justification." *Deiter*, 2021 WL 2020589, at *15 (internal

citation and quotation marks omitted). Real property cannot be the subject of an action for

conversion. *Sterling*, 836 F. Supp. 2d 251, 270 (E.D. Pa. 2011).

Defendants do not contest the Plaintiff has plausibly alleged each element of the

state law claims. Rather, they seek dismissal of the claim because Mayor Cognetti is

entitled to high public official immunity under state law. "Under Pennsylvania law, high

public officials' are absolutely immune from tort liability stemming from action taken within

the scope of their authority." *Kane v. Chester Cnty. Dept. of Children, Youth & Families*, 10

F. Supp. 3d 671, 697 (E.D. Pa. 2014) (internal citation and quotation marks omitted). "The

doctrine immunizes high public officials from state law claims for actions taken in the course

of the official's duties or powers and within the scope of the official's authority." *Id.* (internal

citation and quotation marks omitted).  "In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority."  *Doe v. Franklin Cnty.*, 644 Pa. 1, 17-18, 174 A.3d. 593 (2017).  "The purpose is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the public he or she serves."  *Id.* at 18.

There can be no dispute that Mayor Cognetti is a high-ranking public official under Pennsylvania law.  *See Linder v. Mollan*, 544 Pa. 487, 497, 677 A.2d 1194 (1996) (mayor of municipality "clearly qualifies as a 'high public official').  Thus, the question becomes whether Mayor Cognetti's conduct was "made in the course of [her] duties and scope of [her] authority as Mayor."  *Id.*  However, Plaintiff does not allege any facts regarding whether Mayor Cognetti's conduct was made in the course of her duties and/or within the scope of her authority as Mayor.  (Doc. 1 at ¶¶ 131-143); (Doc. 18 at 39-42).  Thus, it has not plead sufficient facts to establish liability as to Mayor Cognetti.  Accordingly, Defendants' motion to dismiss the state law claims against Mayor Cognetti will be granted.  Plaintiff may file an amended complaint within twenty-one (21) days for the date of this order as to the state law claims alleged in Counts VII and VIII.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.  A separate order follows.

Robert D. Mariani
United States District Judge